COOLEY LLP
JOSEPH D. MORNIN (307766)
(jmornin@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone:    (415) 693 2000
Facsimile:    (415) 693 2222

TIANA A. DEMAS (New York Bar No. 4210472) (*pro hac vice* forthcoming)
(tdemas@cooley.com)
SARAH M. TOPOL (New York Bar No. 5654017) (*pro hac vice* forthcoming)
(stopol@cooley.com)
55 Hudson Yards
New York, New York 10001-2157
Telephone:    (212) 479 6000
Facsimile:    (212) 479 6275

Attorneys for Plaintiff
BELLWETHER COFFEE CO.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BELLWETHER COFFEE CO.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JOHN DOES 1–5,<br><br>　　　　Defendants. | **Case No.**<br><br>**COMPLAINT FOR:**<br><br>**(1) VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §1030, ET SEQ.,**<br><br>**(2) VIOLATION OF THE COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT, CALIFORNIA PENAL CODE § 502, AND**<br><br>**(3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**<br><br>**[DEMAND FOR JURY TRIAL]** |

1. Plaintiff Bellwether Coffee Co. offers tech-enabled, zero-emission commercial coffee roasters designed to help coffee shops source and roast their own beans. Bellwether's coffee roasters access Bellwether's services via the Internet through mesh network Wi-Fi systems. To achieve connectivity with its customers' roasters located throughout the U.S., Bellwether provides its customers individual Wi-Fi devices. Bellwether controls these Wi-Fi networks remotely through the Google Wi-Fi mobile app.

2. This action arises from the Doe Defendants' unlawful disruption of Bellwether's Wi-Fi networks by knowingly causing the transmission of a program, information, code, or command and intentionally causing damage, without authorization, to Bellwether's Wi-Fi networks and its customers' roasters.

3. Specifically, the Doe Defendants accessed without authorization the Bellwether accounts associated with Bellwether's Wi-Fi networks and disabled the Wi-Fi connections between Bellwether and all of its more than 100 customers' roasters throughout the country. As a result, the roasters did not function for at least one day and up to 10 business days. For some customers, the outages required a service visits from Bellwether employees to restore the roasters' function.

4. This unlawful disruption of Bellwether's Wi-Fi networks was designed by the Defendants to intentionally interfere with, and cause damage to, Bellwether's reputation and ongoing business relationships.

5. Bellwether filed this action to unmask the Doe Defendants, including by issuing subpoenas to learn their identities, and for damages to compensate for the significant damage that already has been caused by the Doe Defendants' unlawful actions.

**PARTIES**

6. Bellwether, a Delaware corporation, is a technology and coffee-roasting-machine company, which markets and sells sustainable, electric coffee roasting machines that are accompanied by a range of digital services for green coffee procurement, inventory management, roast profiling, and other features. Bellwether maintains its principal place of business at 1710 Fourth Street, Berkeley, California, 94710.

7. Bellwether does not know the Doe Defendants' true names and therefore sues each

Defendant under the fictitious name "John Doe."  At least one of the Doe Defendants is the user of an Apple device with the Device ID 054215C6-EBE3-44C7-A669-5C65F274C2F5.  Bellwether alleges that the Doe Defendants are legally responsible for the events alleged below and the damages that resulted.

8. Bellwether will amend its Complaint to name the Doe Defendants when their true names and identities are learned through the course of discovery.

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because this action alleges violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

10. The Court has supplemental jurisdiction over the state law causes of action alleged in the Complaint pursuant to 28 U.S.C. § 1367 because these claims arise out of the same nucleus of operative facts as Plaintiff's federal claims.

11. The Court has personal jurisdiction over the Doe Defendants because they directed and targeted their actions at California and its residents, including Bellwether.  The claims in this complaint arise from the Doe Defendants' actions, including their unauthorized and intentional transmission of programs, codes, and commands to Bellwether and its customers' protected computers in the state of California, which caused unauthorized damage.

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(2). Depending on the residence of the Doe Defendants, venue also may be proper under 28 U.S.C. § 1391(b)(1) or (3).

## FACTS

13. Bellwether markets and sells coffee-roasting machines with built-in proprietary software that enables its customers to access a range of digital services for green coffee procurement, inventory management, roast profiling, and other features.  These digital services and software are essential to the use of Bellwether's products and differentiate Bellwether from other companies.  Bellwether's customers are predominantly brick and mortar coffee shops, ranging from large chains to independent stores located throughout the country.

14. Bellwether's customers access these essential digital services through Google mesh network Wi-Fi systems owned and provided by Bellwether ("Customer Wi-Fi Devices").

Bellwether manages the Customer Wi-Fi Devices through two enterprise Google accounts: wifi@bellwethercoffee.com and wifi2@bellwethercoffee.com ("Bellwether Wi-Fi Accounts"). Bellwether uses the Bellwether Wi-Fi Accounts to connect, manage, and communicate with individual Customer Wi-Fi Devices, remotely administer and trouble-shoot Bellwether's roasting machines, install necessary software updates, and manage Bellwether's customers' access to Bellwether's services. Without Wi-Fi access through the Customer Wi-Fi Devices, Bellwether's coffee roasters cannot function.

15.     Between on or about March 1, 2021, and March 2, 2021, John Does 1–5 accessed without authorization the Bellwether Wi-Fi Accounts and, without permission, knowingly transmitted code and commands to disable the Wi-Fi for all of Bellwether's more than 100 customers. The Doe Defendants disabled the Customer Wi-Fi Devices by deleting the association between each Customer Wi-Fi Device and the Bellwether Wi-Fi Accounts. Through their conduct, the Doe Defendants caused all of Bellwether's customers' roasters to lose all access to Bellwether's systems and stop functioning. Defendants' unlawful actions also made it impossible for Bellwether to remotely troubleshoot the Customer Wi-Fi Devices and roasting machines, including by issuing commands and installing necessary software updates. As a result of Defendants' conduct, all Bellwether Customer Wi-Fi Devices and roasters stopped working for an entire day; 78% of Bellwether's customers were impacted for 2–3 days; and 2% of Bellwether's customers were impacted for up to ten business days and required a service visit by Bellwether to restore function.

16.     At all relevant times, the Bellwether Wi-Fi Accounts were password-protected and accessible to only a select number of Bellwether employees via the Google Wi-Fi mobile app.

17.     Bellwether's logs show that at approximately 7:30 p.m. on March 1, 2021, an Apple device with the Device ID 054215C6-EBE3-44C7-A669-5C65F274C2F5 synced[1] with both Bellwether Wi-Fi Accounts. Approximately 30 minutes later, Bellwether's customers' coffee roasters started losing Wi-Fi access, one after another, and stopped working. The pattern and timing of the Wi-Fi loss was consistent with one or more individuals manually deleting the customers' Google Wi-Fi devices from within the Google Wi-Fi app that was connected to the Bellwether Wi-

---

[1] "Sync" is a term used to describe access to a Google account, akin to login or authentication.

Fi Accounts. Bellwether's subsequent investigation revealed that the customers' Google Wi-Fi devices were no longer visible within the Google Wi-Fi app.

18. The Doe Defendants deleted these customers' devices with the express and apparent intent and purpose of harming the economic relationships between Bellwether and its customers and damaging Bellwether's reputation.

19. Bellwether's investigation to date suggests that one of the Doe Defendants may be a former Bellwether employee who was fired approximately three months before the incident occurred. However, there is not yet sufficient information to conclusively link the Device ID to any specific individual or group of individuals.

20. As a result of the Doe Defendants' interference with Bellwether's Wi-Fi system, Bellwether has suffered significant reputational damage, its contractual and economic relationships were disrupted and damaged, and it has suffered losses of at least $5,000.

## COUNT ONE

**(Violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030(a)(5))**

21. Plaintiff realleges and incorporates by reference all preceding paragraphs.

22. The Doe Defendants violated 18 U.S.C. §1030(a)(5)(A), which makes it unlawful to "knowingly [cause] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally [cause] damage without authorization, to a protected computer."

23. The Bellwether Wi-Fi Accounts, Customer Wi-Fi Devices and roasters are "computers" as defined by 18 U.S.C. § 1030(e)(1).

24. The Bellwether Wi-Fi Accounts, Customer Wi-Fi Devices and roasters are "protected computers" as defined in 18 U.S.C. § 1030(e). They are used in or affecting interstate commerce. Bellwether is located in California, and many of the Customer Wi-Fi Devices and roasters are located in different states.

25. The Doe Defendants knowingly caused the transmission of a program, information, code, or command by accessing without authorization the Bellwether Wi-Fi Accounts and issuing commands to delete the association between the Customer Wi-Fi Devices and the Bellwether Wi-

Fi Accounts. These commands caused damage without authorization because they rendered all of Plaintiff's customers' roasters unusable for a period of one to 10 days, and made it impossible for Plaintiff to connect, manage, and communicate with individual Customer Wi-Fi Devices, remotely administer and trouble-shoot Plaintiff's roasting machines, install necessary software updates, and manage its customers' access to Plaintiff's services. At no point in time did Plaintiff authorize such damage.

26. The Doe Defendants' conduct also caused a loss to Plaintiff and its customers in excess of $5,000 during a one-year period, as defined in 18 U.S.C. § 1030(e)(11), including resources Plaintiff expended to investigate and respond to the offense, assess damages, and restore the systems to their prior condition.

27. Plaintiff is entitled to be compensated for losses and damages, and any other amount to be proven at trial.

## COUNT TWO

### (Violation of Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502)

28. Plaintiff realleges and incorporates by reference all of the preceding paragraphs.

29. California Penal Code § 502 (c)(5) renders it unlawful to "[k]nowingly and without permission disrupt[] or cause[] the disruption of computer services or den[y] or cause[] the denial of computer services to an authorized user of a computer, computer system, or computer network."

30. The Doe Defendants disrupted the Bellwether Wi-Fi Accounts, the Customer Wi-Fi Devices, and Plaintiff's customers' Internet-connected roasters without permission by issuing unauthorized commands to delete the association between the Customer Wi-Fi Devices and the Bellwether Wi-Fi Accounts. Through their conduct, the Doe Defendants rendered the customers' roasters unusable for one to 10 days, both disrupting and denying computer services to Plaintiff and its customers.

31. The Doe Defendants' actions caused Plaintiff to incur losses and damages, including, among other things, the expenditure of resources to investigate and remediate Defendants' conduct, damage to Plaintiff's reputation, and damage to the relationship and goodwill

between Plaintiff and its customers and potential customers.  Plaintiff has been damaged in an amount to be proven at trial.

32. Because Plaintiff suffered damages and a loss as a result of the Doe Defendants' actions and continue to suffer damages as a result of the Doe Defendants' actions, Plaintiff is entitled to compensatory damages, attorneys' fees, and any other damages to be proven at trial, as well as injunctive relief under California Penal Code §§ 502(e)(1) and (2).

## COUNT THREE

### (Intentional Interference with Contractual Relations)

33. Plaintiff realleges and incorporates by reference all of the preceding paragraphs.

34. Plaintiff had entered into contractual relationships with over 100 customers at the time of the Doe Defendants' conduct.

35. On information and belief, the Doe Defendants knew of these relationships.

36. The Doe Defendants' unlawfully disrupted Plaintiff's Wi-Fi networks by knowingly causing the transmission of a program, information, code, or command and intentionally causing damage, without authorization, to Plaintiff's Wi-Fi networks and its customers' roasters.  Through their conduct, the Doe Defendants rendered all of Plaintiff's customers' roasters unusable for one to 10 days.

37. By engaging in this conduct, the Doe Defendants specifically intended to interfere with Plaintiff's relationships with its customers.

38. Plaintiff's relationship with each and every one of its customers was disrupted as a result of the Doe Defendants' conduct, including by making Plaintiff's performance of its duties under those agreements more difficult and expensive, requiring Plaintiff to expend resources to resolve the disruptions caused by the Doe Defendants.

39. The Doe Defendants' conduct was a substantial factor in causing Bellwether's harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A. For injunctive relief, including an order barring the Doe Defendants from any further unlawful acts, including any attempts to access Plaintiff's computers systems, networks, databases, or accounts, or any attempts to transfer such files, passwords, or other proprietary and confidential information to any other person or entity, and directing the Doe Defendants to immediately return to Plaintiff any files or information described herein;

B. For judgment in favor of Plaintiff, and against the Doe Defendants, for compensatory, statutory and punitive damages in such amounts as may be proven at trial;

C. For pre- and post-judgment interest as allowed by law;

D. For reasonable attorneys' fees and costs; and

E. For such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury of all issues so triable in this action.

Dated: May 13, 2021                                  Respectfully Submitted,

                                                     COOLEY LLP


                                                     By: */s/ Joseph D. Mornin*
                                                         Joseph D. Mornin

                                                     Tiana A. Demas
                                                     Joseph D. Mornin
                                                     Sarah M. Topol

                                                     Attorneys for Plaintiff
                                                     BELLWETHER COFFEE CO.

248863440