COOLEY LLP
JOSEPH D. MORNIN (307766)
(jmornin@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone:    (415) 693 2000
Facsimile:    (415) 693 2222

TIANA A. DEMAS (New York Bar No. 4210472) (admitted *pro hac vice*)
(tdemas@cooley.com)
SARAH M. TOPOL (New York Bar No. 5654017) (admitted *pro hac vice*)
(stopol@cooley.com)
55 Hudson Yards
New York, New York 10001-2157
Telephone:    (212) 479 6000
Facsimile:    (212) 479 6275

Attorneys for Plaintiff
BELLWETHER COFFEE CO.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BELLWETHER COFFEE CO.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>JOHN DOES 1–5,<br><br>　　　　　Defendant. | Case No. 3:21-cv-03612-JSC<br><br>**PLAINTIFF'S *EX PARTE* MOTION FOR LEAVE TO CONDUCT THIRD-PARTY DISCOVERY** |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFF'S *EX PARTE* MOTION FOR LEAVE
TO CONDUCT THIRD-PARTY DISCOVERY
CASE NO. 3:21-CV-03612-JSC

## I. INTRODUCTION

Defendants hacked into Plaintiff Bellwether Coffee Co.'s systems and took down its nationwide network of coffee roasting machines, essentially bringing its business to a halt. *See generally* Compl., ECF No. 1 ¶¶ 13–20. Bellwether's investigation yielded useful forensic information, including logs showing activity on its Google Wi-Fi accounts, an Apple Device ID that synced with its systems almost simultaneously with the attack, and suspicious connections from a T-Mobile phone associated with a disgruntled former employee. But Bellwether has not been able to positively identify the perpetrators and cannot do so without additional information from third-party service providers, including Google, Apple, and T-Mobile. Bellwether therefore submits this motion to request the Court's permission to issue subpoenas for the limited purpose of learning Defendants' identities.

## II. ARGUMENT

While parties generally cannot seek discovery before conferring under Rule 26(f) of the Federal Rules of Civil Procedure, courts in the Ninth Circuit permit expedited discovery to learn the identities of Doe defendants upon a showing of good cause, *Semitool, Inc. v. Tokyo Electron. Am., Inc.*, 208 F.R.D. 273, 275 (N.D. Cal. 2002), unless the court finds that discovery "would not uncover [the defendants'] identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Courts also routinely allow plaintiffs to issue subpoenas to unmask anonymous wrongdoers on the internet. *See, e.g.*, *Assef v. Does 1–10*, No. 15-CV-01960-MEJ, 2015 WL 3430241, at *3 (N.D. Cal. May 28, 2015) (granting permission to issue a subpoena to Google to learn the defendants' identities); *Dallas Buyers Club LLC v. Doe—69.181.52.57*, No. 16-cv-01164-JSC, 2016 WL 924953, at *4 (N.D. Cal. Mar. 11, 2016) (Corley, M.J.) (granting permission to issue a subpoena to Comcast to learn the defendant's identity).

To determine whether there is good cause to allow expedited discovery to identify Doe defendants, courts consider whether "(1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

PLAINTIFF'S *EX PARTE* MOTION FOR LEAVE
TO CONDUCT THIRD-PARTY DISCOVERY
CASE NO. 3:21-CV-03612-JSC

locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible." *OpenMind Solutions, Inc. v. Does 1–39*, No. C 11-3311 MEJ, 2011 WL 4715200, at *2 (N.D. Cal. Oct. 7, 2011) (citing *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 578–80 (N.D. Cal. 1999)).

Bellwether satisfies all four factors.

***Defendants are real people who can be sued in federal court.*** Bellwether alleges that Defendants attacked its computer systems by accessing without authorization Bellwether's California-based Google Wi-Fi accounts and disabling its customers' Wi-Fi connections through the knowing transmission of code and commands, intentionally causing damage without authorization. Compl. ¶ 15. As a result of Defendants' conduct, Bellwether was unable to provide services to any of its customers for up to 10 days, and in some cases a Bellwether technician had to travel to the customers' locations to manually restore service. *Id.* Defendants are real people, and as a result of their conduct targeting protected computers in California, they are subject to this Court's jurisdiction. *See WhatsApp Inc. v. NSO Group Techs. Ltd.*, 472 F. Supp. 3d 649, 660–678 (N.D. Cal. 2020) (holding that the exercise of jurisdiction was appropriate where the defendants unlawfully accessed the plaintiffs' computer systems in California).

***Bellwether has identified the steps it took to identify Defendants.*** Bellwether's complaint discusses its forensic investigation and its efforts to learn Defendants' identities. Compl. ¶¶ 14–19. Bellwether has thoroughly collected and analyzed all available information. Bellwether's investigation has revealed some of the steps Defendants took to carry out their attack, but Bellwether cannot learn Defendants' identities without obtaining additional information from third parties.

***Bellwether's complaint will survive a motion to dismiss.*** Bellwether has adequately pleaded claims for (1) violations of the federal Computer Fraud and Abuse Act ("CFAA") (Compl. ¶¶ 21–27), (2) violations of the California Comprehensive Computer Data Access and Fraud Act ("CDAFA") (*id.* ¶¶ 28–32), and (3) intentional interference with contractual relations

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

PLAINTIFF'S *EX PARTE* MOTION FOR LEAVE
TO CONDUCT THIRD-PARTY DISCOVERY
CASE NO. 3:21-CV-03612-JSC

1  (*id.* ¶¶ 33–39).

2  First, Bellwether's CFAA claim asserts a violation of 18 U.S.C. § 1030(a)(5), which makes it unlawful to "knowingly cause[] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally cause[] damage without authorization, to a protected computer." Bellwether's Wi-Fi network and internet-connected roasters fall squarely within the statutory definition of "protected computer" (*see* 18 U.S.C. § 1030(e)); Defendants transmitted code or commands that caused damage to Bellwether's systems by taking them offline and making it impossible for Bellwether to provide services to its customers; and Defendants did so without authorization.

Second, Bellwether's CDAFA claim is adequate for the same reasons. *See Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1174 (C.D. Cal. 2018) ("The CDAFA is California's state-law analogue to the CFAA."); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 131 (N.D. Cal. 2020) ("the necessary elements of the [CDAFA] do not differ materially from the necessary elements of the CFAA," and thus CFAA and CDAFA claims "rise or fall" together (quoting *Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 895 (N.D. Cal. 2010)).

Third, Bellwether's claim for intentional interference with contractual relations is also sufficient to survive a motion to dismiss. To state a claim, a plaintiff must show "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) (citations omitted). Bellwether has sufficiently alleged that (1) it has valid contracts with its customers; (2) Defendants knew Bellwether had contractual relationships with its customers; (3) Defendants intended to disrupt these contractual relationships by taking down Bellwether's Wi-Fi network and cutting off its ability to serve its customers; (4) Defendants actually did disrupt these contractual relationships; and (5) Bellwether was harmed as a result. Compl. ¶¶ 13–20.

**Discovery is reasonably likely to identify Defendants.** Third-party service providers are likely to have information that will help identify Defendants. For instance, Google will likely

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

PLAINTIFF'S *EX PARTE* MOTION FOR LEAVE
TO CONDUCT THIRD-PARTY DISCOVERY
CASE NO. 3:21-CV-03612-JSC

have information about the user(s) who accessed without authorization Bellwether's Google Wi-Fi accounts and the commands they sent through these accounts; Apple will likely have information about the Device ID that connected to the Bellwether Wi-Fi network around the time of the attack; and T-Mobile will likely have call records and Internet Protocol ("IP") address information that will corroborate or disprove the theory that the disgruntled former employee may be responsible. Bellwether seeks permission to issue subpoenas to each of these third parties. In addition, Bellwether seeks permission to issue subpoenas to third parties that are not yet known. This is necessary because the initial subpoena responses may identify additional service providers that have necessary information—for instance, Google may provide IP addresses that Defendants used, and Bellwether would then need to issue subpoenas to internet service providers to obtain the customer information associated with those IP addresses. Bellwether does not seek unlimited subpoena power; it seeks permission only to issue subpoenas that are narrowly tailored to the limited purpose of identifying Defendants.

### III. CONCLUSION

Despite conducting a diligent investigation, Bellwether has not been able to learn Defendants' identities. Thus, "granting early discovery to permit [Bellwether] to identify the Doe Defendant[s] appears to be the only way to advance this litigation." *Dallas Buyers Club*, 2016 WL 924953, at *3 (citing *UMG Recordings, Inc. v. Doe*, No. C 08-1193 SBA, 2008 WL 4104215, at *4 (N.D. Cal. Sept. 3, 2008)). Additionally, "there is no prejudice to the Doe Defendant[s] in granting the requested early discovery because it is narrowly tailored to seek only their identit[ies]." *Id.* Bellwether therefore respectfully requests that the Court grant its motion for leave to issue subpoenas for the limited purpose of learning Defendants' identities.

Dated: May 28, 2021

COOLEY LLP

By: /s/ Tiana Demas
       Tiana Demas

Joseph D. Mornin
Sarah M. Topol

Attorneys for Plaintiff
BELLWETHER COFFEE CO.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

PLAINTIFF'S *EX PARTE* MOTION FOR LEAVE
TO CONDUCT THIRD-PARTY DISCOVERY
CASE NO. 3:21-CV-03612-JSC